In the matter of Sacchi.

# U. S. DISTRICT COURT.

## In the matter of ERNEST SACCHI, bankrupt.

The purpose and design of the *bankrupt law*, is to bring the property of the bankrupt into the bankrupt court for administration ; and that court is furnished with all needful power to liquidate and settle all liens thereon ; and where there are adverse claims, which it is not appropriate or proper to litigate by summary inquiry and order, provision is made by giving jurisdiction to the district court, concurrently with the circuit court, for that purpose.

State courts have jurisdiction, it is true, to entertain bills for the foreclosure of mortgagees upon the real estate of a bankrupt, and may, no doubt, properly exercise that jurisdiction, if no objection is made.

In general, mortgagees should not be permitted to pursue the estate of the bankrupt in the state court, but should come to the tribunal which, under federal laws, is charged with its administration.

Upon a review by the circuit court of the decision of the district court, denying an application to remove the assignee in bankruptcy, on the ground of bad faith in the management of his trust, this court will deny the application, on the ground that the register and district court had all the proofs before them and their decision thereon, adverse to his removal, should not be disturbed by this court.

In this case, *held*, that it was either misapprehension on the subject, or a disregard of the proper views of the bankrupt law, that led the mortgagees into the state court for foreclosure, after the bankruptcy, and after the appointment of an assignee, and that the resistance to any withdrawal of the administration from the bankruptcy court, the proper tribunal, has resulted in bitter personal feeling, great and unnecessary delay, &c.

Also *held*, that it appears, pending the controversy, the petitioner for the review has become the sole creditor of the bankrupt, and that no other property of the bankrupt has come to the assignee, except the mortgaged premises, and the bankrupt having united in the petition for the substitution of an assignee to be named by the petitioner, as such sole creditor, and the assignee, by his counsel on the argument of this review, declared his entire assent to such change. Therefore, no reason exists why the prayer of the petitioner to that extent should not be granted.

*March* 27, 1872.

A. C. MORRIS, *for petitioner.*

TRACY, CATLIN & VAN COTT, *for assignee.*

BENEDICT, *J.*—This case comes before the court upon a petition for the removal of an assignee chosen by the creditors of the bankrupt.

The petition is filed by Gustavus A. Sacchi, who since the adjudication of bankruptcy, has become the sole creditor by a purchase of all the debts.

If the petitioner had sought an order for the substitution of an assignee of his own chosing in place of the one originally chosen by the creditors upon the ground that he had become the sole creditor, I should have felt disposed to grant the order. But such an order is declined and the retention of the present assignee asked to be made dependent upon the decision of the court on the charges of misconduct made against him in the petition.

The complaint against the assignee is, that without sufficient cause he attacked two mortgages upon the bankrupt's property known as the " Brooklyn Market," one of $15,000, held by Henry Mill, the other for $30,000, held by the petitioner, and that he has delayed a sale of the property for the purpose of obtaining the rents in order to spend them in litigation.

I have examined with some care the circumstances under which the assignee interposed a defense to the mortgages in question, and stopped the foreclosure proceedings taken in the state court to procure a sale of the property in question, and I find nothing to support a charge of misconduct against this assignee, but on the contrary, much to justify his attack upon the mortgages.

I am confirmed in this opinion by the fact, that none of the creditors except the petitioner appear to have complained of the action of the assignee, that Mill, whose mortgage of $15,000 was attacked for usury, does not appear here to complain, and that where the mortgage of $30,000 held by the petitioner, who is the father of the bankrupt, was attacked, he brought up all the creditors interested to push the attack at a loss of $4000, as he says.

In the matter of Sacchi.

In view of all the circumstances, I am inclined to think, that it would have been good ground for an application for the removal of the assignee if he had omitted to attack the mortgages.

Nor is the method adopted by him in his endeavor to release this property from the mortgages open to criticism. The charge that he delayed the action of the mortgages in order to collect rents to spend in litigation, is wholly unsupported by the evidence, the proofs do not show that he ever collected any rents, or how much he has spent in litigation. The assignee admits that he has paid or became liable for fees in the defense of the suits brought to foreclose the mortgages referred to, but no amount is stated or proved, and so far as the evidence shows there is no fact which will warrant the inference that the defense of the suits was interposed for any other reason except to protect the property from what he supposed to be an illegal demand. It is true, that the assignee might have applied sooner than he did for an order directing the sale of the property, but when he did apply the petitioner opposed, and moreover, it is by no means clear, that the property could with due regard to the interest of the creditors be sold earlier than even the present time.

If the petitioner desired for his own interest to realize upon his mortgage proper proceedings on his part in this court would have given him relief (1 *Dillon*, 511). The petitioner failed to apply to this, and took proceedings in the state tribunals, thus compelling the assignee to resort to injunctions in order to stop his proceedings there and save the property for distribution among the creditors in this court where its distribution properly belongs.

The prayer of the petitioner is therefore denied, with costs of the proceedings to be paid out of the funds.

WOODRUFF, *J.*—The present is an extraordinary appeal to the circuit court. The petitioner for the review of the

decisions of the district court seeks to remove the assignee in bankruptcy, on the ground of bad faith and mismanagement in his trust,. and applies to this court to remove the order denying his application in the form of the express decision and opinion of the register in bankruptcy, and of the district judge, upon the proofs herein, that the assignee would have been derelict in his duty if he had not done substantially what he did.

Had it been possible for the assignee to obtain these opinions in advance upon these same proofs, counsel would hardly have presumed to say that the assignee was guilty of official misconduct calling for his removal because he acted in accordance with those opinions. And yet the court is asked to condemn him as guilty of official misconduct for doing what both the register and the district judge approve As both of those had all the proofs before them which are before me, the claim on this appeal that those proofs show wilful misconduct comes very little short of an attack upon the integritity of the tribunals by whom the proofs were deemed to justify the assignee. Certainly I ought not to impute wilful misconduct and bad faith to the assignee because he drew from the circumstances before him the conclusions which the register and district judge approve.

The question here is not whether in fact there was illegality in the mortgages, the foreclosure of which the assignee resisted, but whether such resistance was fraudulent, malicious or from unjust motive, and not in good faith for the benefit of the creditors. However, I might conclude, that upon the whole case the mortgages were valid ; that the holders had a right to an early foreclosure, and that delay, while the rents, if any, passed into the hands of the assignee, operates prejudicially to the holders of the mortgage. This would come far short of holding that under the circumstances which under the advice of counsel were deemed suspicious—circumstances which the register and district judge have declared suspicious—the assignee act.d

on the suspicion and sought to bring the inquiry into the proper court for investigation. But it is not true that had the mortgagees seen fit to assert their rights in the mode which was most appropriate, any injustice would have been done to them, nor would unnecessary delay have been permitted to occur to ther prejudice.

The purpose and design of the bankrupt law is to bring the property of the bankrupt into the bankrupt court for administration; and that court is furnished with all needful power to liquidate and settle all liens threon; and where there are adverse claims which it is not appropriate or proper to litigate by summary inquiry and order, provision is made by giving jurisdiction to the district court, concurrently with the circuit court, for that purpose. It is true, that state courts have jurisdiction to entertain bills for the foreclosure of mortgages upon the real estate of a bankrupt, and may no doubt properly exercise that jurisdiction, if no objection is made. Special circumstances may sometimes exist in which there is no reason for objection by the assignee, as, for example, when the mortgaged premises are confessedly of less value than the mortgaged debt (*In re Iron Mountains Company, Northern District of New York January,* 1872), and where a foreclosure is pending and the proceedings are nearly completed at the time proceedings in bankruptcy are commenced, it may sometimes be convenient and economical to suffer the validity of the mortgage and the amount due to be settled in the state court; and, even then, whether to permit a sale by the decree of the state court or not, will be in the discretion of the court in bankruptcy. In general mortgagees should not be permitted to pursue the estate of the bankrupt in the state court, but should come to the tribunal which under federal laws is charged with its administration. No injustice can result from this. If there be no doubt whether the mortgaged premises are adequate security for the payment of the debt and interests (when finally adjudged due upon a valid mortgage) the court will recognize the prior

lien of the mortgage upon the land and the equitable right
of the mortgagee to have the rents separated from the general
estate of the bankrupt, by a receivership or otherwise, and
not permit them to be applied to the payment of other debts
or even to the expenses of the assignee or his fees, and on
the obvious ground that he is only entitled to the interest
which the bankrupt has in the premises. Nor will any delay
be permitted without just reference to the interest of all who
are concerned, the mortgagees as well as other creditors.

Nor do I think it doubtful that where no just cause for
questioning the validity of the mortgage exists the courts in
bankruptcy would entertain the summary petition of a mort-
gagee for the sale of the mortgaged premises, and direct the
assignee to make the sale either free of all liens or subject to
the mortgages, as might be deemed judicious· Nor if the
assignee disputed the validity of the mortgage is it doubtful
that under the jurisdiction declared in the second section of
the bankrupt law, the mortgagee may proceed by bill in either
district or circuit court.

It is, therefore, an error to insist that the mortgagee, if not
permitted to proceed in the state court, is remediless, or that
he must await the pleasure of the assignee and suffer him to
collect the rents and interest of the mortgaged premises,
leaving the interest unpaid. I can see, I think, that it is
either misapprehension on this subject or a disregard of these
views that led the mortgagee in this case into the state court
after the bankruptcy and after the appointment of an assignee,
and that the resistance to any withdrawal of the administra-
tion from the bankruptcy court, the proper tribunal, has
resulted in bitter personal feeling, in great and unnecessary
delay and in large expenses and possible loss, which might
have been easily avoided.

It further appears that pending the controversy the pet-
itioner for the review has become the sole creditor of the
bankrupt (other than two paid mortgages of the premises in
question), and that no other property of the bankrupt has

come to the assignee, except the mortgaged premises. The bankrupt united in the petition for the substitution of an assignee, to be named by the petitioner as such sole creditor. The assignee, by his counsel, in the argument of this review, declared his entire assent to such charge. There is, therefore, no reason why the prayer of the petitioner to that extent should not be granted, the present assignee having allowed the use of any moneys collected, his first and reasonable disbursements, and his commission for the moneys received and paid, or to be paid. But it would not be just or reasonable to allow him, as was suggested on the argument, commissions based upon the speculative idea that, possibly if continued in office and permitted for the mere purpose of earning commissions to litigate the validity of the mortgages against the will of all who are interested in that question, he might establish their invalidity.

The bankrupt law was not enacted for the purpose of enabling assignees to earn fees by unnecessary litigation, when no interest of the parties to be affected thereby requires it, and where, on the contrary, every beneficial interest involved therein forbids it. Had it, therefore, appeared that, upon the conceded fact, that there are no general creditors but the petitioner, and therefore, no interest is to be served by further contest respecting the mortgages (the bankrupt himself uniting in the petition), the district court had refused to substitute such other assignee, there might have been reason for asking the court to review the decision. But it appears by the decision of the district judge that the petitioner, declined to take such substitution unless it proceeded upon other grounds, and this also was conceded on the argument in this court. This however, does not appear by the order which was made, and which is under review. It ought, I think, to have been made a part of the order, but it should stand on the record on adjudication that the petitioner was not entitled, upon conceded facts, to have any part of the relief sought. The mere fact that the petitioner, under

the advice of his counsel, thought himself entitled to a removal of assignee on the other ground, probably ought not to deprive him of the opportunity to bring the matter to a close without further litigation.

Let an order be made that the assignee carry the estate of the bankrupt to such assignee as the petitioner and the bankrupt may name; or if they do not agree, to refer it to register Winslow, to receive the nomination of the petitioner, and if he approve of such nomination, then to the assignee so approved, but reserving to the present assignee all moneys collected by him, until his just allowance for his expenses and for his commissions thereon shall be settled in such manner as the district court may direct.